# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JEFF GRUNWALD, | **MEMORANDUM DECISION** |
| Plaintiff, | **AND ORDER** |
| | Case No. 2:09-CV-261 TC |
| v. | |
| THOMAS PATTERSON et al., | District Judge Tena Campbell |
| Defendants. | |

Plaintiff Jeff Grunwald, an inmate at the Utah State Prison, filed this pro se civil rights suit under 42 U.S.C. § 1983. Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. Before the court are Plaintiff's Motion to Appoint Counsel and Defendants Adamson's, Hughes' and Elliott's motions to dismiss.

## I. Motion for Appointed Counsel

Plaintiff moves the court to appoint counsel to represent him in this case. Plaintiff's motion, which was filed at the same time he filed his Amended Complaint, is a standard fill-in-the-blank motion with no supporting memorandum explaining the grounds for his request.

It is well established that plaintiffs in civil cases do not have a constitutional right to counsel. See Carper v. Deland, 54 F.3d 613, 616 (10th Cir. 1995); Bee v. Utah State Prison, 823 F.2d 397, 399 (10th Cir. 1987). However, a district court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1). Carper, 54 F.3d at 617; Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991). When deciding whether to appoint counsel, the court

considers a variety of factors "including 'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.'" Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995) (quoting Williams, 926 F.2d at 996). "The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." McCarthy v. Weinberg, 753 F.2d 836, 838 (10th Cir. 1985).

Weighing the above factors, the court concludes that appointed counsel is not warranted here. At this stage of the litigation the only issue before the court is the sufficiency of Plaintiff's complaint. Moreover, it does not appear that the legal or factual issues presented here are complex or that Plaintiff is unable to adequately represent himself in this proceeding. If the case reaches a point where appointed counsel is warranted, the court will appoint counsel *sua sponte*. Plaintiff's motion for appointed counsel is denied.

## II. Plaintiff's Allegations

Plaintiff's Amended Complaint alleges one claim of cruel and unusual punishment under the Eighth Amendment based on Defendants' alleged failure to adequately ensure Plaintiff's safety. Plaintiff's claim stems from an incident on August 3, 2008, in which he was attacked by another inmate and seriously injured.

Several days before the attack, on July 31, 2008, Plaintiff was asked by Defendant Adamson to assist with distribution of commissary purchases to inmates. During the distribution, Plaintiff allowed another inmate, Mathew Athey, to sign for and receive his cell-mate's (Inmate Perkins) commissary purchases by forging Perkins' signature. Perkins later

reported the commissary items missing.  Later that day, Plaintiff was summoned over the intercom to come to the main rotunda and speak with Defendant Elliott who was investigating how the items went missing.   Plaintiff told Elliott that he didn't know what happened but that officers could easily review the surveillance video of the commissary.  The following day, after reviewing the video tape, Defendant Hughes announced that no one in the housing section would receive outside recreation, gym, or visitation privileges until the missing items were returned. The items were returned later that day.

On August 2, 2008, in the presence of other inmates, Defendants Farnsworth and Dunford questioned Plaintiff further about the commissary incident and, while pointing at a board with pictures of various inmates, repeatedly asked Plaintiff to identify Athey as the recipient of the items reported missing.  Plaintiff adamantly refused, explaining that doing so would get him labeled a "snitch" and place him in jeopardy from other inmates.  Plaintiff also told the officers that there was no need for him to implicate anyone else because officers could simply rely on the video recording.

The following day, on August, 3, 2008, Inmate Athey attacked Plaintiff in a hallway using a lock in a sock, inflicting serious injuries to Plaintiff.  Defendant Dunford allegedly observed the attack but failed to intervene and, instead, opened the section door allowing Athey to flee the scene of the attack.  Plaintiff filed a grievance regarding the incident and received a response from Defendant Hughes denying any relief and stating that none of the officers involved acted inappropriately.

Plaintiff's Amended Complaint names as defendants in their individual capacities Utah

State Prison (USP) employees Lieutenant Wayne Farnsworth, Sergeant Joe Hughes, Sergeant Richard Elliot, Officer Ammon Dunford and Officer Alex Adamson. Plaintiff seeks compensatory damages, punitive damages and costs.

### III. Motions to Dismiss

Defendants Adamson, Hughes and Elliot move for dismissal from this suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants assert that the Amended Complaint fails to adequately allege an affirmative link between their actions and the injuries sustained by Plaintiff. Defendants further assert that even if an affirmative link were shown, they are entitled to qualified immunity because the law was not clearly established at the time of the incident that their actions were unlawful. Plaintiff did not respond to any of these motions.

### A. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations made in the complaint, if true, would entitle the plaintiff to some sort of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his]

4

claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party. Ridge at Red Hawk, 493 F.3d at 1177. However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments. See, e.g., Erikson v. Pawnee County Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). When a civil rights complaint contains only "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions conclusory and does not afford them the presumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009) (quoting Twombly, 550 U.S. at 554-55).

**B. Eighth Amendment Standard**

To state an Eighth Amendment claim based on failure to keep a prisoner safe from attacks by other inmates, a plaintiff must satisfy a two-prong test. First, the plaintiff must allege facts showing "that he [was] incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Second, the plaintiff must show that the prison official had "a 'sufficiently culpable state of mind' . . . one of 'deliberate indifference to inmate

health or safety.'" Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health and safety." Farmer, 511 U.S. at 837. The official's state of mind must be measured by a subjective standard, meaning he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." Id. at 842. Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. The deliberate indifference requirement is not satisfied by showing negligence or constructive notice. Id. at 835, 841. This is because an official's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838.

### C. Sufficiency of Plaintiff's Allegations

### i. Defendant Adamson

Plaintiff's only factual allegations regarding Defendant Anderson are that Anderson asked Plaintiff to assist with the commissary distribution and that Anderson routinely allowed inmates to pick up commissary items without presenting identification. Although Plaintiff also makes the conclusory assertion that Anderson "intentionally acted with deliberate indifference and intent to cause Plaintiff bodily injury," Plaintiff does not allege specific facts to support this assertion.

Plaintiff's allegations are not sufficient to affirmatively link Defendant Anderson to a

6

violation of Plaintiff's rights.  Plaintiff does not allege that Anderson was involved in any way with the assault which occurred two days after Plaintiff assisted Anderson with the commissary. Although Plaintiff implies that it was Anderson's failure to require inmates to present identification that caused the mixup which led to the attack, Plaintiff does not allege any facts showing that Anderson knew, or should have know, that an assault might occur.  In fact, despite Plaintiff's assertion that Anderson routinely failed to check inmates' identification, Plaintiff does not allege that this ever created problems in the past.  Moreover, Plaintiff specifically alleges that it was the other officers' labeling Plaintiff a snitch that actually led to him being attacked.  Thus, the court concludes that Plaintiff's Amended Complaint fails to state a claim against Defendant Adamson.

### ii. Defendant Hughes

Plaintiff's only factual allegations against Defendant Hughes are that Hughes threatened to punish Plaintiff's entire housing section if the missing commissary items were not returned and that Hughes later denied Plaintiff's initial grievance regarding the incident.  Plaintiff's remaining allegations against Hughes are merely a "formulaic recitation" of the elements of his claim and a conclusory assertion that Hughes was deliberately indifferent to Plaintiff's safety.

Plaintiff's allegations are not sufficient to state a claim for relief against Defendant Hughes.  Turning first to Hughes' alleged threat to punish the entire section if the missing commissary items were not returned, there are no allegations showing that this tactic caused Plaintiff to be assaulted, or that Hughes knew his actions would seriously jeopardize Plaintiff's safety.  Plaintiff does not allege that Hughes identified Plaintiff as a suspect in the commissary

incident or that he implied that the entire section was being punished due to Plaintiff's actions. Nor does Plaintiff allege that he told Hughes his approach would place Plaintiff in jeopardy. Finally, even if Hughes was negligent in not recognizing the potential danger created by his approach, mere negligence is not sufficient to show deliberate indifference.

Regarding Hughes involvement with the grievance process, as other courts have recognized, "the mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct." Boles v. Dansdill, No. 05-CV-01661-PSF-DBS, 2007 WL 2770473, at *4 (D. Colo. Sept. 20, 2007) (citing Johnson v. G.E.O./Lawton Corr. Facility, 2005 WL 2739212 (W.D. Okla., Oct. 24, 2005)). This is particularly true where the supervisor has ample reason to believe that the situation has already been resolved. Although in some instances reviewing grievances might make a supervisor aware of facts "from which the inference could be drawn that a substantial risk of serious harm exists," Farmer, 511 U.S. at 837, such was not the case here, where the grievance was filed several days after the attack. Plaintiff does not allege that he was still in danger when he filed his grievance, so there was nothing Hughes could have done after reviewing Plaintiff's grievance to ensure his safety. Moreover, Hughes' conclusion that the other officers acted appropriately does not amount to a separate injury to Plaintiff.

Defendant Hughes is entitled to dismissal.

### iii. Defendant Elliott

Plaintiff's only factual allegation regarding Defendant Elliott is that on the day of the commissary distribution, Elliot spoke with Plaintiff in the presence of other inmates regarding

the missing items but Plaintiff refused to name those involved. Plaintiff also makes the conclusory assertion that Elliott "willfully and intentionally acted with deliberate indifference and with intent to cause plaintiff bodily injury and disregard plaintiff's safety by forcing plaintiff to become a jailhouse informant before and in the presence of fellow prisoners." (Compl. at 3.) This allegation, however, is merely a boilerplate statement common to each of the defendants named in the Amended Complaint.

Plaintiff's allegations are not sufficient to show an affirmative link between Defendant Elliott's actions and Plaintiff's injuries. Although Plaintiff alleges that Elliott spoke with him in the presence of other inmates, Plaintiff denies disclosing any information during that conversation that could have earned him a reputation as a snitch. In fact, Plaintiff states that he specifically told Elliott that he had no idea who took the missing items. Plaintiff's statements about the video surveillance recordings were not sensitive enough to place Plaintiff in any danger as it was undoubtedly common knowledge that they existed. Moreover, Plaintiff does not allege that he told Defendant Elliott that he was in danger or that he asked to be moved to another unit for his safety.

Plaintiff's allegations are insufficient to state a claim against Defendant Elliott.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's motions for appointed counsel (Dkt. Nos. 23 and 46) are **DENIED**;

(2) Defendants Adamson's and Hughes' Motion to Dismiss (Dkt. No. 33) is **GRANTED**;

(3) Defendant Elliott's Motion to Dismiss (Dkt. No. 37) is **GRANTED**; and

(4) Plaintiff's Motion for Discovery (Dkt. No. 45) is **DENIED** based on Defendants'

filing of their <u>Martinez</u> Report.

DATED this 29th day of March, 2011.

BY THE COURT:

_Tena Campbell_
_____
Tena Campbell
United States District Judge